UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10350-RGS

CHECKFREE CORPORATION

v.

CHARLES RIVER SYSTEMS, INC.,
D/B/A CHARLES RIVER DEVELOPMENT
and
DANIEL L. PAPAGNI

MEMORANDUM AND ORDER ON PLAINTIFF'S
REQUEST FOR FURTHER INJUNCTIVE RELIEF

March 17, 2010

STEARNS, D.J.

I find it baffling that an experienced attorney would persuade himself that this opening sentence to a brief constitutes effective advocacy.

> After wading through the obfuscation, gratuitous sideswipes and feigned innocence littering defendants' responses to the motion for temporary restraining order of plaintiff CheckFree Corporation, trading as "Fiserv," it is apparent that defendants essentially admit the material facts supporting Fiserv's request for temporary restraints.

Plaintiff's Reply Brief, at 1.

Shorn of its Latinate phrasing, the sentence is meant to convey in the starkest terms possible the accusation that the opposing side is engaged in a deliberate effort to bamboozle the court by distorting and concealing the truth.[1] Perhaps I live too sheltered an existence, but the customary language of the law to which I am exposed consists

---

[1] Accusations of outright criminal conduct on the part of Charles River Systems, Inc.'s (Charles River) officers and employees are reserved for page 2 of the brief where the pejoratives "steal," "theft," "purloined," "thieves," and the like, are scattered at random over the page.

ordinarily of logic and reason. Overheated, agitated, and defamatory rhetoric parading as legal argument tends to undermine my confidence in whatever else is being said. So it is here.

By way of background, the court responded promptly to plaintiff CheckFree's (d/b/a Fiserv) Complaint that Daniel Papagni, a former Fiserv vice-president, had taken to his new job as an account executive with defendant Charles River, a competitor of Fiserv, a list of several hundred of Fiserv's customer contacts, which in due course, he shared with the Charles River sales team.[2] Fiserv was alerted to this faithless conduct by a disgruntled employee of Charles River.

Within days of the filing of the Complaint, the court held a hearing at which it ordered that the customer contact list and any copies in the possession of Charles River be returned to Fiserv. The court also ordered that Charles River preserve any evidence that might tend to show that it or its employees had misused any of the information on the list. The court hesitated, however, at the breadth and potential unmanageability of two other aspects of the relief requested by Fiserv, namely:

> (1)(b). Restraining and enjoining the defendant from using, disclosing or transmitting for any purpose the information contained in any Fiserv client list; and

---

[2]That Papagni – who apparently denies none of this – breached his confidentiality promises to his former employer by distributing the bootlegged list seems self-evident, despite Charles River's insistence that the list contained nothing of a truly proprietary nature.

2

> (1)(c). Restraining and enjoining the defendants from soliciting, conducting business with or otherwise initiating any further contact or communication with any individual or entity identified on any Fiserv client list.[3]

Consequently, the court asked for additional briefs.

The considerations underlying the issuance of a preliminary injunction are familiar: "(1) the movant's likelihood of success on the merits; (2) the potential for irreparable harm; (3) a balancing of the relevant equities; and (4) the effect on the public interest." Campbell Soup Co. v. Giles, 47 F.3d 467, 470 (1st Cir. 1995). See also Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996) ("Likelihood of success is the main bearing wall of the four-factor framework."). A court must also be attentive to the prudential consideration that in dispensing medicine as potent as equitable relief, it should – at least on the first go-around – choose the least burdensome and intrusive means of insuring a defendant's compliance with the law. Langlois v. Abington Hous. Auth., 207 F.3d 43, 49 (1st Cir. 2000).

Charles River, for its part, maintains that the contact information that Fiserv now seeks to restrict and protect is almost entirely available to the public on the Internet. More telling is Charles River's assertions – which are not rebutted by Fiserv: (1) that of the 209 companies whose names appear on the bootlegged contact list, 73 are existing Charles River customers; (2) that of the 136 remaining companies, 72 were being actively courted by Charles River prior to Papagni's hiring; and (3) that all of this happened a year ago and Fiserv nonetheless is unable to document the loss of a single sale resulting from the improper disclosure of the list. All of this suggests that Fiserv is not facing the prospect of

---

[3]Fiserv has attempted to address the court's overbreadth concerns by excluding existing clients of Charles River from the no-contact provisions of (1)(c).

the type of irreparable (non-compensable) harm that the extraordinary remedy of a preliminary injunction is meant to avert.

## ORDER

For the foregoing reasons, the Orders entered by the court at the March 1, 2010 hearing granting requested relief (1)(a) and (1)(d) will remain in effect. Fiserv's request for entry of the additional relief identified in paragraphs 1(b) and 1(c) of its February 26, 2010 motion for a preliminary injunction is DENIED. The parties will submit a joint proposed discovery plan within ten (10) days of the date of this Order.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE